**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

LISA R.,[1]

               Plaintiff,

      v.                                 **DECISION AND ORDER**
                                         20-CV-522-A

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      Plaintiff Lisa R. ("Plaintiff"), brings this action seeking review of the Commissioner

of Social Security's final decision that denied the application filed by Plaintiff for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA").

The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 9, 12), and Plaintiff filed a reply

(Dkt. No. 13).

      The Court assumes the parties' familiarity with the administrative record, the

parties' arguments, and the standard of review, to which the Court refers only as

necessary to explain its decision. _See Schaal v. Apfel_, 134 F.3d 496, 500-501 (2d Cir.

1998) (summarizing the standard of review and the five-step sequential evaluation

process that Administrative Law Judges [ALJs] are required to use in making disability

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## PROCEDURAL HISTORY

In 2013, Plaintiff, then aged 44 years old, applied for SSI alleging disability beginning on July 29, 2012 due to hepatitis C; bipolar disorder, depression, and anxiety; "cannot be around others/ crowds/ loud noises"; carpal tunnel in bilateral hands; "drops items/ no strength/ hands fall asleep all the time"; and epilepsy.  T. 95, 185-193, 194-205, 231, 728.[2]  Her application was initially denied in November 2013.  T. 108, 111-118.  After filing a request for a hearing, Plaintiff appeared and testified at a hearing and a continuation of that hearing, on August 4, 2015 and March 17, 2016, respectively, before Administrative Law Judge ("ALJ") Eric L. Glazer.  T. 36-65, 66-89, 119. Following the hearing, ALJ Glazer consulted with a Vocational Expert ("VE").  *See* T. 284-295, 305-312.  ALJ Glazer issued an unfavorable decision on July 8, 2016, finding Plaintiff not disabled.  T. 17-30.  Plaintiff thereafter requested review by the Appeals Council but her request was denied in September 2017.  T. 1-3, 182.

In November 2017, Plaintiff sought review of the Commissioner's July 8, 2016 final decision by this Court.  T. 835-836 (District Court Complaint); *see* Case No. 17-cv-1194.  On November 8, 2018, Magistrate Judge Kenneth Schroeder, Jr. issued a Decision and Order granting Plaintiff's motion for judgment on the pleadings and remanding the case for further administrative proceedings, on the basis that the ALJ accorded a treating source opinion by Michael Woltz, PA "substantial weight", yet failed

---

[2] "T. __" refers to pages of the administrative transcript.

to provide an explanation for discounting portions of the opinion when formulating the physical Residual Functional Capacity (RFC).  T. 862-873.  On remand, the Appeals Council issued an order for further proceedings/ actions to comply with the Court's Decision and Order, and for a new decision.  T. 875-879.

A second hearing was held on November 21, 2019, this time before ALJ Stephen Cordovani, at which Plaintiff and a VE both appeared and testified.  *See* T. 751-804.  At the hearing, Plaintiff's attorney alleged substantially the same severe impairments as previously, with the addition of neck and back pain, and osteoarthritis in bilateral knees. T. 755-756.  ALJ Cordovani issued an unfavorable decision on December 31, 2019, which again found that Plaintiff was not disabled within the meaning of the SSA.  T. 725-742.  This action seeks review of the Commissioner's final decision.[3]  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The parties' dispute in this case centers on the ALJ's RFC determination.

An individual's RFC is "what an individual can still do despite his or her limitations", or in other words his or her "maximum remaining ability to do sustained

---

[3] It appears Plaintiff did not file any written exceptions to the decision at issue.  As such, it became final 61 days following the date of the notice informing Plaintiff of the unfavorable decision.  *See* T. 726.

work activities in an ordinary work setting on a regular and continuing basis[.]  [T]he RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Melville v. Apfel*, 198 F.3d 45, 53 (2d Cir. 1999), quoting SSR 96-8p, 1996 SSR LEXIS 5 at *5, 1996 WL 374184, *2 (S.S.A. July 2, 1996).  "It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis." *Williams v. Comm'r of Soc. Sec.*, 18-CV-1027, 2020 WL 4904947, 2020 U.S. Dist. LEXIS 151236, *7 (W.D.N.Y. Aug. 20, 2020), citing 20 C.F.R. §§ 404.1545(a)-(e) and *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

In determining a claimant's RFC, the ALJ must assess a claimant's exertional capacities, addressing her ability to sit, stand, walk, lift, carry, push, and pull.  *See* 20 C.F.R. § 404.1545(b).  "Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered." *Kristina T. v. Comm'r of the SSA*, 2019 WL 5425261, 2019 U.S. Dist. LEXIS 183310, *23 (N.D.N.Y. Oct. 23, 2019).

Here, the ALJ determined that Plaintiff has the RFC to perform light work, with limitations that are set forth below.  Plaintiff argues that the ALJ improperly weighed the opinion evidence of Susan Dantoni, M.D., and C. Butensky, in formulating the physical and mental components of the RFC, respectively.  According to Plaintiff, due to these alleged errors, the RFC is unsupported by substantial evidence and remand is required.

## A.      Physical RFC finding

By way of brief background, there is no dispute that Plaintiff has CTS[4] and that she received some treatment for that condition.  In 2012, Plaintiff underwent various studies (including an EMG study) and was diagnosed with CTS.  T. 330-335.  She had right carpal tunnel release surgery on April 24, 2015.  T. 1335-1338.  Approximately a year later, on April 29, 2016, she had left carpal tunnel release surgery, as well as an injection of her right thumb with an anti-inflammatory corticosteroid.  T. 1107.

In the administrative decision, at step two, the ALJ found that Plaintiff's CTS, bilateral CTS status-post surgical release, seizure disorder, and asthma are severe impairments.  T. 730.  Later, in formulating Plaintiff's RFC of light work,[5] the ALJ included the following physical limitations:  can sit at least 6 hours per day; can stand and walk at least 6 hours per day; can occasionally lift, carry, push and pull 10 pounds and 5 pounds on a regular or frequent basis; no work around hazards such as unprotected heights or dangerous moving mechanical parts; no climbing ladders, ropes or scaffolds; and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants.  T. 732.  Notably, no manipulative limitations, *i.e.*, reaching, handling, fingering, or feeling, are included in the RFC despite the ALJ's earlier finding that Plaintiff's bilateral CTS and "bilateral CTS status-post surgical release" constitute severe impairments.

---

[4] Carpal tunnel syndrome is "a condition caused by compression of the median nerve in the carpal tunnel and characterized especially by weakness, pain, and disturbances of sensation in the hand and fingers." *Carpal Tunnel Syndrome*, Merriam-Webster Medical Dictionary available at https://www.merriam-webster.com/dictionary/carpal%20tunnel%20syndrome#medicalDictionary (last visited July 14, 2021).

[5] The regulations define "light work" to include "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and to require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

Plaintiff argues that the ALJ should have assigned more than "little weight" to the consultative examination opinion, with attached medical source statement, of Susan Dantoni, M.D., dated June 21, 2019.  *See* T. 1028-1039.  Specifically, Plaintiff asserts that the handling limitations from that opinion related to Plaintiff's CTS should have been included in the RFC.  The Commissioner argues that the physical limitations of the RFC are supported by substantial evidence and that the RFC finding is free of legal error; the ALJ properly rejected certain limitations set forth in Dr. Dantoni's opinion because they were contradicted by the record and Plaintiff's activities of daily living.

Plaintiff's chief complaint to Dr. Dantoni was "very limited use of both her hands." She reported 8/10 pain; regular numbness in her hands; dropping items "all the time"; and difficulty pushing, pulling, and carrying.  T. 1028.  Upon physical examination, Dr. Dantoni noted a decreased range of motion of both wrists bilaterally, and a 4/5 strength in bilateral upper extremities.  T. 1030.  As to fine motor activity of her hands, Dr. Dantoni observed "very diminished hand and finger dexterity bilaterally"; 4/5 grip strength in both of her hands; and Plaintiff's inability to "tie, button, or zipper with her hands."  T. 1031; *see* T. 1035.  Dr. Dantoni's opinion, was that, *inter alia*, Plaintiff has "severe bilateral [CTS] with weakness in hands and arms and decreased dexterity", and "moderate limitations for lifting, carrying, and reaching" along with "marked limitations for handling objects."  T. 1031, 1033.  Dr. Dantoni opined that Plaintiff could never reach (overhead or otherwise), handle, finger, feel, or push or pull bilaterally.  T. 1035.  She could never lift or carry, even up to 10 pounds.  T. 1033.  Furthermore, Plaintiff was not able to sort, handle, or use paper files.  T. 1038.

Dr. Dantoni's opinion was fastidiously summarized in the ALJ's decision.  *See* T. 735-736.  In assigning "little weight" to that opinion, the ALJ reasoned that it "was based on a one-time examination overly reliant upon subjective complaints including those for conditions not even claimed", to include Plaintiff's shoulders and neck.  T. 740.  The ALJ also explained, "Dr. Dantoni's opinion of never reaching, handling, fingering, feeling, pushing or pulling is not consistent with the myriad of activities that the claimant can perform."  T. 740.

As set forth above, the ALJ did not include any limitations as to reaching, handling, fingering, or feeling in his decision, and included less restrictive limitations as to lifting, carrying, pushing, and pulling.  If the ALJ erred in not including the proposed limitations from Dr. Dantoni's opinion in the RFC, that would constitute reversible error.  The VE testified that a restriction of never reaching, handling, or fingering would eliminate the jobs the VE identified, as would no lifting or carrying.  T. 802.[6]

"The relevant factors considered in determining what weight to afford an opinion provided by a medical source include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source."  *Czechowski v. Comm'r of Soc. Sec.*, 1:17-CV-0282 (WBC), 2018 WL 3620114, 2018 U.S. Dist. LEXIS 126961, *11 (W.D.N.Y. July 30, 2018), citing 20 C.F.R. § 404.1527(c)(1)-(6) (applicable to evaluating opinion evidence for claims filed before March 27, 2017).  These factors are to be considered as to both treating physicians and "non-treating acceptable medical sources, such as consultative physicians and

---

[6] A restriction of *occasional* reaching, handling, and fingering, however, would eliminate only one of the three jobs identified.  T. 801-802.

psychiatrists." *Jakubik v. Colvin*, 1:15-cv-00481-MAT, 2017 WL 6014453, 2017 U.S. Dist. LEXIS 199801, *17 (W.D.N.Y. Dec. 5, 2017).[7]

Plaintiff argues that the ALJ's reasoning that Dr. Dantoni's opinion was "overly reliant upon subjective complaints" is "not a valid reason to reject the opinion."  (Dkt. No. 9-1, p. 22).  "To be clear, an ALJ cannot lawfully reject a medical source's opinion *solely* because it relies on subjective complaints . . . But he can reject the opinion if he previously found the claimant's subjective complaints unsound and the medical source relied on those complaints when reaching his opinion." *Tomczak v. Comm'r of Soc. Sec.*, 18-CV-64-FPG, 2019 WL 2059679, 2019 U.S. Dist. LEXIS 78628, *3 (May 9, 2019) (emphasis added) (internal citations omitted); *see Collins v. Comm'r of Soc. Sec.*, 2020 WL 5742677, 2020 U.S. Dist. LEXIS 176556 *14-15 (W.D.N.Y. Sept. 24, 2020) ("the ALJ found plaintiff's subjective complaints not wholly consistent, in part due to her opioid medication-seeking behaviors") (collecting cases).

The ALJ did not reject Dr. Dantoni's opinion only because he deemed it "overly reliant" on Plaintiff's subjective complaints.  The ALJ also reasoned that Dr. Dantoni examined Plaintiff just one time; evaluated conditions that Plaintiff is not even claiming in her application for SSI;[8] and that the limitation of never reaching, handling, finger,

---

[7] Plaintiff argues that the ALJ failed to "properly consider the appropriate factors" in weighing Dr. Dantoni's opinion.  To the extent Plaintiff suggests that the ALJ erred in not explicitly discussing each of the § 404.1527(c) factors when assigning the opinion "little weight", the case law cited by the parties (*see* Dkt. No. 9-1, p. 19; Dkt. 12-1, p. 9) is not applicable, as it addresses remand when the ALJ fails to "explicitly consider" the non-exclusive factors in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), in assigning the opinion of a *treating physician* less than controlling weight.  Dr. Dantoni is not a treating source.  In any event, even for treating sources, explicit consideration of the *Burgess* factors is not reversible error when "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019).  Upon doing so, the Court concludes that the ALJ properly considered the applicable factors when weighing Dr. Dantoni's opinion.

[8] Plaintiff did not claim shoulders as severe impairments. *See* T. 95, 185-193, 194-205, 231, 728, 755 (additional impairments claimed at second hearing).  Furthermore, when the ALJ questioned Plaintiff at

pushing, or pulling was inconsistent with Plaintiff's activities of daily living.  *See* T. 740.

Although "[t]he opinions of consulting sources are entitled to more weight where . . . the

consultant directly examines the claimant", *Mahon v. Colvin*, Case # 15-CV-398-FPG,

2016 U.S. Dist. LEXIS 87485, *12 (July 6, 2016), citing 20 C.F.R. § 404.1527(c)(1), that

was just one factor for the ALJ to consider when weighing Dr. Dantoni's opinion, and the

fact that Dr. Dantoni performed only one examination, on a consultative basis, could

undermine the weight accorded to her opinion, *compare* § 404.1527(c)(2)(i) ("When the

treating source has seen [a claimaint] a number of times and long enough to have

obtained a longitudinal picture of [the claimant's] impairment, we will give the source's

opinion more weight than we would give it if it were from a nontreating source.").

Consistency is also a proper factor for the ALJ to consider.  *See* § 404.1527(c)(4)

("Generally, the more consistent a medical opinion is with the record as a whole, the

more weight we will give to that medical opinion.").  Plaintiff argues that, contrary to the

ALJ's finding, the record is consistent with the limitations in Dr. Dantoni's opinion;

furthermore, the ALJ failed to articulate how Plaintiff's activities of daily living run

contradictory to those limitations.

In an earlier part of the decision, the ALJ reviewed Plaintiff's daily activities, and

medication and other treatment (or lack thereof), among other factors, in "considering

[her] subjective reports of pain and limitations in determining [the] RFC".  *Bertram v.*

*Berryhill*, Case No. 2:17-cv-00033, 2018 WL 1010287, 2018 U.S. Dist. LEXIS 27649,

*52 (D. Vt. Feb. 21, 2018), citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Genier v. Astrue*,

---

the second hearing about her alleged, additional severe impairment involving her neck, "What about your neck?  Have you gotten any treatment for your neck?", Plaintiff responded, "No, I don't have any thing on my neck…"  T. 786.

606 F.3d 46, 49 (2d Cir. 2010).  "The ALJ's reasons for discounting a claimant's subjective complaints must be set forth with sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." *Bertram*, 2018 U.S. Dist. LEXIS 27649 at *52-53, citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (internal quotation marks omitted).  The Court concludes that the ALJ did so here.

The ALJ considered, *inter alia*, Plaintiff's limited treatment and medications, her use of a Smart phone, the fact that she lives alone, and her testimony that she "can shop alone, cook, shower, dress, comb hair, brush teeth and walk to the store . . . She can do laundry (at sister's house)."  T. 739.  Plaintiff asserts that the activities of daily living testified to do not equate with working full-time.  However, "[t]here is no authority supporting the contention that a plaintiff's activities of daily living need to rise to a level comparable with full-time sustained employment to be considered not disabled."  *Abreu v. Astrue*, 11 Civ. 3719 (ALC), 2012 WL 4714892, 2012 U.S. Dist. LEXIS 143966 *9-10 (W.D.N.Y. Sept. 27, 2012) (internal quotation marks and citation omitted); *compare Batista v. Comm'r of Soc. Sec.*, 3:19 CV 1660 (RMS), 2020 WL 6709096, 2020 U.S. Dist. LEXIS 213454 *6-7 (Nov. 16, 2020) ("the ALJ incorrectly cited to [the plaintiff's] activities of daily living as examples of improvement and fewer symptoms of her anxiety in 2015 *when the documentary evidence did not support that conclusion*.") (emphasis added and quotation marks omitted).

The ALJ further noted Plaintiff's acknowledgement at the hearing that "her last wrist/CT[S] treatment was shortly after surgery".  T. 739.  Plaintiff testified that she stopped treating her CTS shortly after her second operation because her provider

wanted her to undergo surgery on her thumb, and she was concerned about the timeframe for rehabilitation seeing as she lived alone at the time.  She was not speaking with any doctors about the problems with her wrists because her doctor was "the only doctor in town", and she was not taking medications for her hands or wrists.  T. 783-785.  In the context of the decision, it is apparent that the ALJ interpreted Plaintiff's decision to not pursue further treatment for her CTS as evidence that she did not have functional limitations.  He stated, "[i]t is recognized that the claimant may experience some degree of pain and discomfort.  However, mild to moderate pain or discomfort is not, in itself, incompatible with the performance of sustained work activity."  T. 739.

Beyond Dr. Dantoni's opinion, there were number of other opinions related to Plaintiff's diagnosis of CTS and her ability to use her hands, which the ALJ weighed in formulating the physical component of the RFC.  The weight afforded those other opinions is not contested by Plaintiff, including two opinions rendered by treating source PA Woltz.[9]

PA Woltz's initial opinion from August 22, 2015, in the form of his responses in a Physical Residual Functional Capacity Questionnaire, see T. 661-665, was that Plaintiff could frequently lift and carry less than 10 pounds, rarely 10 pounds, and never 20 pounds; she had significant limitations with reaching, handling, and fingering due to "numbness to hands";  and bilaterally she could use her hands (grasp, turn, and twist

---

[9] The Court notes that a physician's assistant (PA) is a "non-acceptable source", a point that is not argued by Plaintiff.  See Desiree D. v. Comm'r of Soc. Sec., 20-CV-6197L, 2021 WL 1746435, 2021 U.S. Dist. LEXIS 85355, *9 (May 4, 2021); Schoeps v. Comm'r of Soc. Sec., 17-CV-989-FPG, 2019 WL 1284267, 2019 U.S. Dist. LEXIS 46010 *8 n.1 (W.D.N.Y. Mar. 18, 2019) ("While not an acceptable medical source, conclusions by PA Smith were consistent with the ALJ's RFC determination.").

objects) 10% of the work day, use her fingers (fine manipulations) 10% of the work day, and use her arms (reaching, including overhead) 30% of the work day.

In contrast, during an evaluation of both of Plaintiff's hands on September 14, 2016 and in a treatment note from that date (after her left wrist carpal tunnel release was performed on April 29, 2016 and after the initial administrative decision was issued), *see* T. 1105-1106, PA Woltz stated, "[o]n physical exam she does not appear to be limited in the use of her hands.  Upon casual observation, she uses a cell phone, fills out forms, uses a clipboard and pen without overt limitations."  Plaintiff continued to complain about pain in the palmar surface of her hand, weakness, dropping objects, and "achiness around the base of her right thumb."  Further objective findings showed a well-healed surgical wound from the carpal tunnel release surgery, full flexion and extension of all digits of both of her hands, and good range of motion of both wrists and elbows.  PA Woltz performed carpal tunnel compression testing to Plaintiff's left wrist, which induced pain into the palmar surface of her hand.  PA Woltz noted a "slightly positive grind test" that reproduced the pain of her chief complaint, which had to do with possible osteoarthritis to the CMC joint around the base of her right thumb.

PA Woltz concluded that Plaintiff had "some residual symptoms" from her left carpal tunnel release surgery.  He noted that her surgeon from those surgeries

> recommended formal hand therapy to see if we cannot help this patient recover some function and reduce pain.  We will send her to occupational therapy.  They can work on her residual symptoms from the carpal tunnel release which I advised would most likely clear up in the months to come. Possibly therapy can speed this up.  Also a splint can be fashioned to the base joint of her right thumb where the developing arthritis [sic] and with some exercises and Voltaren gen she may get along just fine.  We will see her back on a when necessary basis.

12

PA Woltz also noted that "[a]t time of discharge", Plaintiff was asking about filling out disability forms, but he opined that she "is not disabled[10] and should be able to function for most employment activities that would replicate the functions of activities of daily living.  Specifically, lifting, pulling, pushing 5 pounds on a regular basis [and] 10 pounds intermittently."  T. 1106.

The ALJ gave "some weight" to the August 22, 2015 opinion by PA Woltz because it was rendered prior to Plaintiff's surgery on her left side.  He gave "greater weight" to his September 22, 2016 opinion "regarding the extent of limitations associated with bilateral CTS condition, as he had a greater longitudinal picture of the claimant's condition (after surgery) and he was acutely aware of disability issues as this report in particular was specifically rendered to address claimant's request that he fill out disability forms."  T. 740.  The ALJ also reasoned that the September 22, 2016 assessment was stated as occurring "[a]t time of discharge", which "indicate[d] that this reflects her final condition at maximal medical improvement regarding the condition he treated."  T. 740; *see* T. 1106.

It is not the Court's position to weigh conflicting evidence in the record.  Indeed, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's

---

[10] Although PA Woltz opined that Plaintiff is not disabled, "[a]s stated in the regulations, a physician's statement that an individual is or is not disabled or that he can or cannot work is a statement on an issue reserved to the Commissioner and is not entitled to any special significance."  *Jones v. Comm'r of Soc. Sec.*, CASE # 18-cv-01299, 2019 WL 6841522, 2019 U.S. Dist. LEXIS 216132, *9 (W.D.N.Y. Dec. 16, 2019), citing 20 C.F.R. §§404.1527(d), 416.927(d); *see Lao v. Colvin*, 14-CV-7507(ADS), 2016 U.S. Dist. LEXIS 67393, *36-37 (E.D.N.Y. May 23, 2016) ("[A]n opinion that a claimant is 'not disabled,' by itself, is not entitled to controlling weight.  Rather, the ALJ must look to all of the medical findings and other evidence that support a medical source's statement, in determining whether a claimant meets the definition of a disability.") (internal quotation marks and citation omitted).  The ALJ clearly considered other medical findings and evidence in support of PA Woltz's statement, aside from his opinion of no disability.

conclusion must be upheld." *Mc Intyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (internal citation omitted).

Throughout the record, Plaintiff complained of pain, paresthesia (tingling or prickling sensation), numbness, and weakness affecting her bilateral hands, fingers, and wrists. She also complained of dropping items. Following each of Plaintiff's carpal tunnel release surgeries, she initially expressed satisfaction with the results but then at some point renewed her previous complaints about her hands, fingers, and wrists. *See* T. 688-689, 723-724, 1105-1106; *but see* T. 1115-1116 (9/27/2016 follow-up with primary care physician, with notation as to her CTS that she was "doing well on current meds, may continue", and that she "does not wish any other [treatment]") and T. 1124-1125 (8/2/2016 [same]). At the most recent administrative hearing on November 21, 2019, Plaintiff testified that she was unable to, among other things, carry or hold a gallon or 2-liter container of milk because it falls when she picks it up, or open a jar of pickles. She also testified that after surgery her hands worsened, and she lost all strength in her hands. Nevertheless, shortly after her second surgery, she did not continue with treatment or medication for her CTS.

Moreover, while there are objective findings supporting Plaintiff's claims of CTS, to include a positive Phalen's sign and Tinel's sign, her physical examinations also periodically show 4/5 to 5/5 strength bilaterally in her upper and lower extremities, good range of motion, good grip strength and strength against resistance, ability to make a full fist and extend all digits, full range of motion in her upper and lower extremities, and full flexion and extension of all digits.

In sum, the Court concludes that the ALJ did not err in the evaluation of Dr. Dantori's opinion, and that he reached a physical RFC supported by substantial evidence.

## B.   Mental RFC finding

At step two, the ALJ found that Plaintiff's major depressive disorder; generalized anxiety disorder; and marijuana use, opioid use, and substance use disorders (in varying degrees of remission) are severe impairments.  T. 730.  Then, the ALJ determined that Plaintiff has the RFC to perform a limited range of light work, with the following mental limitations:  can understand, remember and carry out simple instructions and tasks; can occasionally understand, remember and carry out complex instructions and tasks; no supervisory duties; occasional independent decision-making and goal setting; minimal changes in work routine and processes; and occasional interaction with supervisors and co-workers.  T. 732.

Plaintiff argues that the ALJ erred in affording the most weight to the November 15, 2013 opinion of a non-examining physician, State agency psychological consultant C. Butensky, in assessing Plaintiff's mental RFC.  Plaintiff argues that Dr. Butensky's opinion is stale, and that the ALJ rejected the remaining psychiatric opinions in the record.  Thus, Plaintiff reasons, the ALJ improperly assessed the mental RFC without a "medical backing", and it is unclear where the limitations in the RFC came from and why they do not "go further."

Dr. Butensky's opinion, *see* T. 95-107, was based on a review of psychiatric treatment, hospital, and primary care records, and the November 7, 2013 consultative examination report of Susan Santarpia, Ph.D.  Dr. Butensky opined that Plaintiff

"retain[ed] the capacity to perform simple job tasks."  T. 101.  She also opined that

Plaintiff was moderately limited in the following areas:  ability to understand, remember,

and carry out detailed instructions; ability to maintain attention and concentration for

extended periods; ability to work in coordination with and in proximity to others without

being distracted by them; ability to complete a normal workday and workweek without

interruptions from psychologically-based symptoms and perform at a consistent pace

without an unreasonable number and length of rest periods; ability to accept instructions

and respond appropriately to criticism from supervisors; ability to respond appropriately

to changes in the work setting; ability to be aware of normal hazards and take

appropriate precautions; and ability to set realistic goals or make plans independently of

others.  There were other areas where Plaintiff had no significant limitations.  T. 104-

105.

The ALJ gave "great weight" to Dr. Butensky's opinion because it was based on

a review of the record, and Dr. Butensky had "program knowledge."  T. 740.  The

limitations as assessed by Dr. Butensky are largely reflected in the mental component

of Plaintiff's RFC.  *See* T. 732.  Moreover, contrary to Plaintiff's assertion, the ALJ did

not outright "reject" the other psychological opinions of record.  The ALJ instead

accorded "some" weight to the opinion of consultative examiner Susan Santarpia,

Ph.D., from November 7, 2013, *see* T-365-369, and the opinion and attached medical

source statement of consultative examiner Dante Alexander, Psy.D., from June 21,

2019, *see* T. 102-1026.  These opinions were given "some weight", the ALJ explained,

because they were "generally consistent" with each other and with the opinion of Dr.

Butensky.  T. 740.  Dr. Santarpia opined that the results of Plaintiff's examination

"appear[ed] to be consistent with psychiatric and substance abuse problems, but in and of itself this does not appear . . . significant enough to interfere with the claimant's ability to function on a daily basis."  T. 368.  Dr. Alexander issued a similar opinion years later. T. 1022.

Contrary to Plaintiff's suggestion that the ALJ must assess an RFC using a particular medical opinion, "the regulations explicitly assert the RFC is an administrative finding reserved to the Commissioner and not a medical finding."  *Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054, 2021 WL 2042576, 2021 U.S. Dist. LEXIS 97111, *9 (W.D.N.Y. May 20, 2021), citing 20 C.F.R 416.927(d).

Each of the limitations in the mental RFC finding corresponds to those in Dr. Butensky's opinion.  Plaintiff concedes as much.  Dkt. No. 9-1, p. 17 ("the ALJ . . . relied primarily on [Dr. Butensky's opinion] to determine Plaintiff's mental RFC").  These mental RFC findings also largely mirror the limitations stated by Drs. Santarpia and Alexander, opinions that were given "some weight" by the ALJ.  *Compare John G. v. Saul*, 19-CV-01203-MJR, 2021 WL 118313, 2021 U.S. Dist. LEXIS 6859 *4 (W.D.N.Y. Jan. 13, 2021) (remanding where the ALJ gave only partial or limited weight to every mental medical opinion in the record but found that the plaintiff could have occasional interactions with others, a finding that ran contrary to the plaintiff's severe impairment of agoraphobia).

The ALJ thoroughly summarized:  these three opinions regarding Plaintiff's mental functioning, treatment records (including ones post-dating Dr. Butensky's opinion and as recent as May 2019), *see* T. 737-739, and Plaintiff's testimony concerning her mental health disorders, *see* T. 733.  It is apparent that the ALJ considered the entire

record when formulating Plaintiff's RFC, and upon the Court's review of the record, Dr. Butensky's opinion could constitute substantial evidence because it aligned with other evidence in the record.  Moreover, "[a]n ALJ may rely on the opinion of a non-examining medical source in formulating the RFC, because such sources are deemed to be qualified experts in the field of social security disability."  *Desirae D.*, 2021 U.S. Dist. LEXIS 97111, at *14.

As to the question of staleness, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. May 19, 2015) (internal quotation marks and citation omitted).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition."  *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 910 (W.D.N.Y. Aug. 27, 2018).  It is well-settled, however, that "a medical opinion is not stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole."  *Id.*

Plaintiff argues that her mental condition worsened after November 2013, when Dr. Butensky's opinion was rendered, because she continued to receive mental health treatment, with notations of suicidal ideation and increased anxiety.  She also notes additional, prescribed medications and increased dosages of certain medications.  The records that she cites to in support of this argument, however, do not reflect that her condition significantly "deteriorated" after Dr. Butensky issued her opinion, to necessitate obtaining an updated assessment of Plaintiff's mental health (and which was done so anyway with Dr. Alexander's June 21, 2019 opinion).

This case is readily distinguishable from *Luciano v. Comm'r of Soc. Sec.*, 1:19-CV-1137 (CJS), 2020 U.S. Dist. LEXIS 18041 (W.D.N.Y. Sept. 30, 2020), which Plaintiff relies upon.  In *Luciano*, the plaintiff experienced a mental health "exacerbation" that precipitated her diagnoses of agoraphobia, anxiety disorder, and PTSD, and "frequent home healthcare visits" for approximately four months.  *Id.* at *2, 15-16.  The visit notes were "over 600 pages, and consistently indicate[d] high anxiety, which [the p]laintiff managed primarily by staying home."  *Id.* at *16.  As there was no up-to-date medical opinion about the plaintiff's mental functioning to account for what appeared to be the plaintiff's worsening condition, the Court remanded the case solely to fill in the evidentiary gap regarding her mental impairments after the exacerbating events that took place.  *Id.* at *17-18.

By contrast, here, the records post-dating Dr. Butensky's opinion referred to by Plaintiff illustrate her continued mental health issues, to include her fluctuating levels of anxiety, which manifested at times in "picking" at her skin; the inability to sleep well; the adjustment of prescribed medications and their dosages to address Plaintiff's complaints that her medications were not working; and the allusion to Plaintiff's suicidal ideations or history of suicidal ideations.  These same issues are reflected in records both before and after Dr. Butensky's opinion was rendered.  *Compare* T. 351, 509, 515, 520 (records from 2013, but before November 15, 2013) *with* T. 619-624, 672, 677, 684, 1236, 1242-1243 (records from 2015 and 2019).  "[J]ust because the claimant continues treatment after an opinion is rendered . . . does not mean that the opinion is stale."  *Kidd v. Comm'r of Soc. Sec.*, 18-CV-217-FPG, 2019 WL 1260750, 2019 U.S. Dist. LEXIS 45045, *11 (W.D.N.Y. Mar. 19, 2019) (internal quotation marks and citations omitted).

The ALJ explicitly considered record evidence succeeding Dr. Butensky's opinion.  In addition to noting Plaintiff's subjective complaints and medical diagnoses, the ALJ also considered that Plaintiff seemed focused on obtaining benzodiazepines despite her history of opioid dependence, her mental health treatment was "sparse",[11] and she had "compliance issues with numerous missed appointments."  T. 737-739.  The ALJ found that "the claimant's apparent disinterest in following the appropriate medical treatment clearly raises doubt concerning the claimant's motivation for optimum management of her symptoms in order to return to the work force."  T. 737-739.  It is well-settled that "[t]he substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*."  *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis added) (internal quotation marks and citations omitted).

In sum, "Plaintiff failed to prove limitations beyond those noted in the ALJ's RFC finding."  *Luther v. Colvin*, 12-CV-6466, 2013 WL 3816540, 2013 U.S. Dist. LEXIS 102062, *18 (W.D.N.Y. July 22, 2013) (concluding that "the complete record indicates that Plaintiff's prognosis was fair with more consistent medication and sobriety"); *see e.g. Desirae D.*, 2021 U.S. Dist. LEXIS 97111, at *15 ("[T]here are other opinions in the record which plaintiff summarily suggests should be given more weight than Dr. Efobi. Plaintiff fails to identify, or even allege, any error with the ALJ's evaluation of these opinions, nor does she point to any evidence in the record to support a more restrictive

---

[11] The Court notes that at the second administrative hearing, Plaintiff testified that she saw a counselor one-on-one, once per week for an hour, and attended group therapy sessions once per week, as a part of her treatment at the methadone clinic that she had been enrolled in since 2017.  T. 778-779.  She was later asked, "are you getting any other counseling or anything for any mental health issues?", and responded, "No, and I should be."  T. 787.

mental RFC.").  Plaintiff's generic allegation that the mental limitations in the RFC should "go further", without any explanation about what limitations should have allegedly been included but were not, and how the failure to include such limitations constitutes harmful error, falls short of meeting this burden.[12]

Substantial evidence supported the ALJ's finding that Plaintiff could perform a reduced range of light work, with specific mental limitations, based on Plaintiff's testimony; treatment notes; and the three psychiatric opinions, including Dr. Butensky's.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, the Commissioner's motion (Dkt. No. 12) for judgment on the pleadings is GRANTED, and Plaintiff's motion (Dkt. No. 9) for similar relief is DENIED.  Plaintiff's Complaint (Dkt. No. 1) is DISMISSED WITH PREJUDICE.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  July 16, 2021
         Buffalo, New York

---

[12] Dr. Butensky noted several limitations that did not make their way into the mental RFC:  namely, moderately limited in ability to maintain attention and concentration for extended periods; ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and ability to be aware of normal hazards and take appropriate precautions.  Plaintiff does not establish or even argue, however, that these particular limitations should have been included and that failure to do so requires remand.